IN THE UNITED STATES DISTRICT COURT
                               FOR THE
                    MIDDLE DISTRICT OF PENNSYLVANIA


GABRIEL PITTMAN,                :
                                :
          Plaintiff             :
                                :   CIVIL NO. 3:CV-14-598
                                :
     v.                         :   (Judge Conaboy)
                                :
TOM CORBETT, ET AL.,            :
                                :
          Defendants            :
_____
                            **MEMORANDUM**
                            **Background**

     This pro se civil rights action pursuant to 42 U.S.C. § 1983 was filed by Gabriel Pittman (Plaintiff), an inmate presently confined at the State Correctional Institution, Houtzdale, Pennsylvania (SCI-Houtzdale) in the United States District Court for the Eastern District of Pennsylvania.

     By Memorandum and Order dated February 27, 2014, the Eastern District granted Pittman's request for leave to proceed in forma pauperis, dismissed some of his claims and Defendants, and transferred his surviving claims relating to his prior confinement at the State Correctional Institution, Dallas, Pennsylvania (SCI-Dallas) to this Court.

     Thereafter, by Order dated April 11, 2014, a second action filed by Plaintiff in this district, Pittman v. Corbett, et al.,Civil No. 3:CV-14-567,which was simply intended to be a proposed amended complaint was consolidated into this matter.  See

                                 1

Doc. 11. However, the proposed amended complaint was not accepted and Plaintiff was granted leave to file and serve a proper amended complaint. See id. A subsequently submitted amended complaint (Doc. 13) by Pittman was accepted by this Court.

By Memorandum and Order dated September 5, 2017 a motion to dismiss filed by Defendant Corizon Healthcare Inc. was granted. See Doc. 52. Remaining Defendants are Governor Tom Corbett; Secretary John Wetzel, Chief Counsel Suzanne Hueston, and Chief Grievance Officer Dorina Varner of the Pennsylvania Department of Corrections (DOC). Plaintiff is also proceeding against the following SCI-Dallas officials: former Superintendent Jerome Walsh; current Superintendent Lawarence Mahally; Business Manager David Popek; Budget Analyst Michael Roth; Health Services Administrator Myron Stanishefski; Mail Room Supervisor Giselle Malet; and Records Supervisor Diane Vale (hereinafter the Corrections Defendants). Other Defendants are Doctor Stanley Stanish; Physicians' Assistants Jennifer Porta, O'Brien, Loretta, and Tara Cynwinski.

According to the Amended Complaint, Pittman is pursuing three claims. See Doc. 13, § IV. Plaintiff's initial claim contends that he is being detained and falsely imprisoned pursuant to a void and non-existent judgment of conviction and is being denied the opportunity to challenge the legality of his imprisonment via a prison administrative grievance.

With respect to his second claim, Plaintiff states that he has been diagnosed with a skin disorder, "steatocystoma multiplex which has riddled his body with innumerable sebaceous cysts and

2

many keloids" which cause moderate pain when they become infected or irritated. Doc. 13, ¶ 11. Steatocystoma multiplex is an uncommon benign disorder which typically manifests as multiple asymptomatic intradermal cysts. See Doc. 31, p. 2. Pittman alleges that he has been denied adequate treatment for his condition. Specifically, he asserts that previously prescribed steroid injections were improperly discontinued and he has not been provided with needed excision and draining of infected/ruptured cysts.

Plaintiff's remaining claim asserts that his rights of access to the courts and freedom of speech have been violated because of a change in prison policy regarding the use of envelopes. He indicates that legal mail which he attempted to send to the Commonwealth Court of Pennsylvania was improperly returned to him because he used Commonwealth purchased envelopes as opposed to envelopes purchased from the prison commissary. The Amended Complaint seeks injunctive relief, compensatory and punitive damages.

Corrections Defendants filed an answer and affirmative defenses to the Amended Complaint on August 23, 2017. See Doc. 50. Presently pending are the parties cross motions for judgment on the pleadings. See Docs. 53 & 61.

## **Discussion**

Corrections Defendants seek entry of judgment on the pleadings because (1) Plaintiff's claims relating to the legality of his conviction and imprisonment were previously dismissed with prejudice; (2) the Amended Complaint improperly combines multiple

3

disparate claims into one lawsuit; (3) Defendant Stanishefski was not personally involved in any constitutional misconduct and disagreement with a medical treatment plan does not set forth a valid deliberate indifference claim; and (4) Plaintiff was not denied access to the courts.

Plaintiff has filed a cross motion for judgment on the pleadings which asserts that he is not challenging the lawfulness of his conviction but rather the failure of Defendants to create an administrative remedy which would provide him with opportunity to raise a claim of unlawful detention. Second, Pittman asserts that he is properly pursuing a claim that Health Care Administrator Stanishefski was personally involved because after becoming aware of the changes in his treatment that Defendant condoned the allegedly improper medical decisions of Plaintiff's treating physician. Plaintiff also maintains that he adequately asserts that Corrections Defendants' new envelope policy violated both his right of access to the courts and his First Amendment right of freedom of speech.

While Plaintiff's cross motion opposes the Corrections Defendants' argument, Pittman does not set forth any arguments showing why he is entitled to judgment on the pleadings. As such, Plaintiff's cross motion will be denied to the extent that it seeks such relief.

## **Standard of Review**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial . . . " Under

4

Rule 12(c), "judgment will not be granted unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Jablonski v. Pan American World Airways, Inc., 863 F.2d 289, 290 (3d Cir.1988) (citation omitted). As with a motion to dismiss under Rule 12(b)(6), the "Court 'views the facts alleged in the pleadings and the inferences to be drawn from those facts in the light most favorable to the plaintiff.'" Mele v. FRB, 359 F.3d 251, 253 (3d Cir.2004) (quoting Leamer v. Fauver, 288 F.3d 532, 535 (3d Cir.2002)).

**Joinder**

Corrections Defendants' initial argument asserts that this matter should be dismissed because Pittman "should not be permitted to join all of his disparate claims together in a single lawsuit." Doc. 54, p. 8.

The United states Court of Appeals for the Third Circuit has recognized that a complaint that "avers multiple constitutional violations over a span of seven years" arising out of different transactions and occurrences which in many instances fails to specify the defendant who committed the alleged constitutional violation failed to comply with Rules 8 and 20. Pruden v. SCI Camp Hill, 252 Fed. Appx. 436, 438 (3d Cir. 2007). The Court of Appeals added that under such circumstances the appropriate remedy was to afford the plaintiff an opportunity to file a proper amended complaint.

It has been similarly recognized that when a complaint "collects a series of distinct claims, involving diverse parties,

5

and disparate acts which are alleged to have occurred at different times" the "joinder of such claims in a single lawsuit is inappropriate" under Rule 20 and the plaintiff should be afforded leave to file an amended complaint. Hull v. Unknown and Known Members of U.S. Government, 2012 WL 5508494 *8 (M.D. Pa. Oct. 3, 2012).

It is well settled that pro se pleadings are to be construed liberally, Haines v. Kerner, 404 U.S. 519, 520 (1972). Plaintiff's pending claims stem from the same period of confinement at SCI-Dallas and are limited to three claims. Moreover, given the advanced age of these proceedings as well as Pittman's pro se status, this Court sees no reason to disturb the Eastern District's determination that the pending claims should be transferred to this Court and opened as a single action. The request for dismissal on the basis of improper joinder will be denied.

**Challenge to Imprisonment**

Plaintiff's Amended Complaint asserts claims against Governor Corbett, Chief Counsel Hueston, Chief Grievance Officer Varner, Superintendents Walsh, and Mahally and Records Supervisor Vale because they failed to create a post-deprivation system by which Pennsylvania state inmates can challenge unlawful detention. It is noted that Pittman acknowledges that he does not wish to pursue a claim that he is being imprisoned beyond his maximum sentence. See Doc. 60, p. 15. Rather, Plaintiff indicates that he wishes to challenge the legality of his state criminal sentence itself.

6

Corrections Defendants argue that Pittman's allegations are not properly raised before this Court because they were previously dismissed by the Eastern District's February 27, 2014 Memorandum and Order.

The Eastern District's February 27, 2014 Memorandum and Order addressed Plaintiff's claim that Defendants violated his constitutional rights by rejecting or failing to consider his challenge to the legality of his conviction and incarceration through the prison's grievance procedure. It concluded that "all of Plaintiff's claims based on his allegedly invalid criminal judgment and his related imprisonment are dismissed as frivolous because they are not cognizable in a civil rights action." Doc. 4, p. 4. The Eastern District added any related claim by Pittman pertaining to the prison's grievance process was likewise subject to dismissal. See id.

Clearly, Plaintiff's claims that ex-Governor Corbett, Chief Counsel Hueston, Chief Grievance Officer Varner, Superintendents Walsh, and Mahally and Records Supervisor Vale failed to create a post-deprivation system which would allow Pennsylvania state inmates opportunity to administratively raise challenges of unlawful detention were not among those transferred to this Court from the Eastern District and therefore not properly asserted in the Amended Complaint.

Moreover, those claims by Pittman were previously addressed and dismissed on their merits by the February 27, 2014 decision of the Eastern District, consequently, Plaintiff's attempt to resurrect those allegations in his Amended Complaint must fail.

7

Former Governor Corbett, Chief Counsel Hueston, Chief Grievance Officer Varner, Superintendents Walsh, and Mahally and Records Supervisor Vale are entitled to entry of dismissal with respect to this claim. It is also noted that although Plaintiff has no constitutional entitlement to a grievance process, the DOC does in fact have a well established grievance procedure whereby prisoners can raise allegations pertaining to their treatment while incarcerated.

Finally, Plaintiff's apparent argument that he is without an adequate remedy to attack the legality of his imprisonment is simply meritless since he has multiple Pennsylvania state court remedies by wish to challenge the legality of his conviction and sentence.

**Personal Involvement**

Plaintiff contends that the Corrections Defendants acted with deliberate indifference to his medical needs by failing to respond to his medical complaints. Corrections Defendants argue there is no basis for liability since there is no assertion that any of them were personally involved in the purported deliberate indifference to Pittman's medical needs.

They elaborate that any allegations against Health Care Administrator Stanishefski must fail because that official's alleged failure to respond to Pittman's medical complaints does not set forth a discernible deliberate indifference claim because the Plaintiff was already being treated by a prison physician. See Doc. 54, p. 11.

8

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. See Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

Furthermore, federal civil rights claims brought under § 1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Averments that a supervisory official approved or ratified a subordinate's conduct after the event were insufficient for liability. Clark v. Borough of Hanover, Civ. No. 92-595, slip op. at 14 (M.D. Pa. Sept. 11, 1992) (Caldwell, J.); see also Holman v. Walls, Civ. A. No. 86-1 JRR, 1989 WL 66636 at 6* (D. Del. June 13,

9

1989), (failure to discipline after the fact was insufficient to show a policy); Krisko v. Oswald, 655 F. Supp. 147, 152 (E.D. Pa. 1987) (post hoc approval insufficient).

Prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)).

In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235 - 36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). The Court of Appeals for the Third Circuit in Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993 added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when he is already receiving treatment by the prison's medical staff. However, where a failure or delay in

providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. See id.

It is undisputed that Plaintiff has been diagnosed with steatocystoma multiplex, an uncommon benign disorder which typically manifests as multiple asymptomatic intradermal cysts. As such, this Court is satisfied at this stage in the proceedings that Plaintiff has adequately alleged that he has a serious medical condition. The only allegations of medical deliberate indifference against the Corrections Defendants are directed to Health services Administrator Stanishefski.

The Amended Complaint acknowledges that Plaintiff has been treated and or evaluated by an SCI-Dallas contracted physician, Doctor Stanish as well as a dermatologist, Doctor Schleicher. See Doc. 13, ¶ 13. The Amended Complaint's main focus with respect to Plaintiff's deliberate indifference claims is the allegation that Doctor Stanish acted improperly by stopping previously prescribed sporadic steroid injections excision/incision and draining of infected and ruptured cysts. It is also asserted that other members of the prison medical staff (Defendants O'Brien, Cynwinski, and Porta) were deliberately indifferent because they denied Plaintiff's requests to be seen by a doctor for treatment of his cysts.

There are no facts alleged in the Amended Complaint showing that Health Services Administrator Stanishefski had any actual involvement in the Plaintiff's day to day medical care. There are also no claims that Stanishefski made any decisions, or denied any recommended treatment regarding Pittman's medical care. Rather,

11

Plaintiff contends that despite receiving the Plaintiff's grievances, the Defendant acquiesced in the decisonmaking of Doctor Stanish by following Doctor Stanish's orders and not issuing a directive to the prison's medical staff authorizing that the previously prescribed but subsequently discontinued treatment be reinstated.

It appears that Plaintiff may be attempting to establish liability against Health Services Administrator Stanishefski on the basis of his supervisory duties within the prison's Medical Department, which is insufficient under Rode. Likewise, under the principles announced in Clark, Defendant Stanishefski is also entitled to an entry of dismissal to the extent Plaintiff is attempting to establish liability based on Stanishefski's involvement in the denial of Plaintiff's administrative grievances and complaints. Since Stanishefski is not alleged to have had direct involvement in Plaintiff's medical care and the only basis for liability is the assertion that he failed to override the treatment decisions made by Plaintiff's attending physician, the Defendant is entitled to entry of dismissal.

**Access to the Courts**

Pursuant to a former DOC policy all inmates were provided with eight (8) free envelopes a month. Those envelopes are referred to as Commonwealth envelopes as opposed to envelopes purchased by inmates from the prison commissary, i.e., commissary envelopes.

Corrections Defendants acknowledge that an internal memorandum dated October 16, 2013 was issued to the SCI-Dallas inmate population advising them that effective December 1, 2013 the

12

above described policy would be discontinued.  The DOC's revised policy states that the practice of "allowing inmates to utilize Commonwealth purchased envelopes for mailing parcels above and beyond the authorized eight (8) no cost, one ounce first class letters will be discontinued."  Doc. 50-1, p. 2.  The updated policy added there would be no limit on the number of letters that inmates may send at their own expense and that envelopes were available for purchase through the prison commissary.  See id.

The revised policy does provide that approved indigent inmates would still be allowed to utilize a Commonwealth purchased envelope for allowable legal remedies but would be subject to an eight cent additional charge for the cost of the envelope.  There is no indication that Plaintiff has been classified as being an approved indigent inmate.

On December 20, 2013, after the updated policy when into effect, Corrections Defendants acknowledge that Plaintiff attempted to use Commonwealth purchased envelopes for the purpose of filing a petition for review in Pennsylvania state court.  The mail was returned to him unprocessed with a copy of the policy.  Later that same day, Pittman resubmitted his mail again using Commonwealth purchased envelopes.  The mailings were again returned with a note from Defendant Popek that Plaintiff must use commissary purchased envelopes in accordance with DOC policy.

On January 22, 2014, Plaintiff again unsuccessfully tried to use Commonwealth purchased envelopes to mail out notices of appeal.  Two days later, those pieces of mail were similarly returned unprocessed because they were not commissary purchased envelopes.

Corrections Defendants argue that Plaintiff's challenge to envelope policy to the extent that it asserts a denial of access to the courts claim cannot be entertained because Pittman has not alleged any actual injury. See Doc. 54, p. 13. They add that Pittman has not alleged that he was an approved indigent inmate which would have allowed him to still use a Commonwealth purchased envelope. Furthermore, the Amended complaint does not set forth facts which would explain why the inmate was unable to obtain commissary purchased envelopes.

Prisoners enjoy a constitutional right of meaningful access to the law libraries, legal materials, or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. Likewise, any assertion that there was a negligent handling of his inmate mail must also fail. See Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)(negligence claim does not expose a defendant to liability under § 1983)

A plaintiff must also allege an actual injury to his litigation efforts. Under the standards mandated by Lewis, in order for an inmate to state a claim for interference with his legal work, he must demonstrate that he has suffered actual injury. See Oliver v. Fauver, 118 F.3d 175, 177-78(3d Cir. 1997)(concluding that Lewis effectively requires a showing of actual injury where interference with legal mail is alleged).

14

Based upon an application of Lewis and Oliver to the Amended Complaint and the parties' pending motions, Plaintiff has not alleged that he suffered actual injury with respect to a non-frivolous legal claim as a result of the implementation of the DOC's updated envelope policy. Consequently, dismissal of the claim that the updated policy violated Plaintiff's right of access to the courts will be granted.

**First Amendment**

Plaintiff contends that the DOC's updated envelope policy violated his right of freedom of speech. Corrections Defendants state that the new policy is constitutional. However, they offer no support for that conclusion. It is also asserted that Plaintiff has not established personal involvement by many of the Corrections Defendants with respect to challenge to the envelope policy. However, they acknowledge that Plaintiff does allege personal involvement by Defendants Walsh, Popek, Roth and Malet. See Doc. 62, p. 11.

It is well settled that interference with inmate mail may amount to a denial of free speech under the First and Fourteenth Amendments. When addressing allegations of improper mail inspections and intrusive mail regulations or any actions involving outgoing inmate mail, the test developed by the Supreme Court in Procunier v. Martinez, 416 U.S. 396, 412 (1974), must be employed. Hamm v. Rendell, 166 Fed. Appx. 599, 603 (3d Cir. 2006). Courts must determine if the prison restriction or conduct relating to outgoing inmate mail furthered an important or substantial government interest unrelated to the suppression of expression, and

15

whether the conduct was intrusive only to the degree necessary to protect that interest.  Id.; see also, Nasir v. Morgan, 350 F.3d 366, 371-74 (3d Cir. 2003)(Procunier should be applied to outgoing prisoner correspondence issues).

The Corrections Defendants' pending motion does not address the issue of whether the updated envelope policy satisfies the requirements of Procunier.  Accordingly, Plaintiff's claim that the envelope policy violates his First Amendment rights will proceed against Defendants Walsh, Popek, Roth and Malet.

In conclusion, Plaintiff's cross motion for judgment on the pleadings will be denied and the Corrections Defendants' motion for judgment on the pleadings will be granted with exception of the denial of freedom of speech claim against Defendants Walsh, Popek, Roth and Malet.

An appropriate order will enter.

> S/Richard P. Conaboy
> Richard P. Conaboy
> United States District Judge

DATED: SEPTEMBER 25, 2018