# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GABRIEL PITTMAN,** | : | **CIVIL ACTION NO. 3:14-CV-598** |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **TOM CORBETT, et al.,** | : | |
| Defendants | : | |

## MEMORANDUM

Gabriel Pittman, a Pennsylvania state inmate, filed this amended 42 U.S.C. § 1983 complaint alleging—as relevant here—that Defendants violated his First Amendment right with regard to postage requirements for outgoing mail. (Doc. 13). Pennsylvania Department of Corrections ("DOC") Defendants Jerome Walsh, David Popek, Michael Roth, and Giselle Malet (collectively "Remaining DOC Defendants") have filed a motion for summary judgment. (Doc. 69). Pittman opposes the motion and requests permanent injunctive relief and reconsideration of a previous order that partially granted a motion for judgment on the pleadings. (Doc. 74). For the following reasons, Remaining DOC Defendants' motion for summary judgment will be granted, and Pittman's requests will be denied.

## I. Factual Background & Procedural History[1]

In early 2013, the Pennsylvania State Correctional Institution at Dallas ("SCI-Dallas") provided inmates with eight "no cost, one-ounce, first-class envelopes with postage pre-paid" each month ("Commonwealth-Purchased Envelopes"). (Doc. 71 ¶ 2). After an inmate used his monthly allotment of Commonwealth-Purchased Envelopes, he was required to attach cash slips to all outgoing mail to pay for postage. (Id. ¶ 3). During 2013, staffing levels at SCI-Dallas were decreased, leading to a concern among mail staff that they would not be able to timely process outgoing mail. (Id. ¶ 4). To alleviate such concerns, SCI-Dallas implemented a new policy effective December 1, 2013[2] ("Revised Policy"); under the Revised Policy, inmates still received eight Commonwealth-Purchased Envelopes per month but all non-indigent inmates were thereafter required to purchase from the commissary additional envelopes with postage prepaid ("Commissary-Purchased Envelopes"),

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 71, 73). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

[2] Notice of the Revised Policy was circulated to inmates on October 16, 2013. (Doc. 71 ¶ 6).

rather than submit to the mailroom a blank envelope with an attached cash slip. (Id. ¶¶ 5, 7).

On December 20, 2013, Pittman attempted to use a Commonwealth-Purchased Envelope with an attached cash slip to mail a petition for review to the Pennsylvania Commonwealth Court. (Id. ¶ 8). Four days later, that envelope was returned to Pittman, unprocessed, with a copy of the Revised Policy and an explanation that his mail was rejected because he had already surpassed his allotted number of Commonwealth-Purchased Envelopes for that month. (Id. ¶ 11). That same day, Pittman resubmitted his mail in another Commonwealth-Purchased Envelope; that letter was again returned, unprocessed, with a note from Popek explaining that Pittman must use Commissary-Purchased Envelopes in accordance with the Revised Policy. (Id. ¶¶ 12, 13). On January 22, 2014, Pittman attempted to mail an appeal using a Commonwealth-Purchased Envelope, but the mail was again returned to Pittman because he had exceeded his allotted number of Commonwealth-Purchased Envelopes for the month. (Id. ¶¶ 14, 15). During this time Pittman was not an approved indigent inmate. (Id. ¶ 16).

In 2014, Pittman filed this action with the United States District Court for the Eastern District of Pennsylvania; that court dismissed Pittman's challenge to his confinement and transferred what remained of the case to this District. (Docs. 5, 6, 7). Pittman then filed an amended complaint alleging that: (1) he is being detained pursuant to a non-existent criminal judgment; (2) his Eighth Amendment right against cruel and unusual punishment is being violated by the improper treatment

3

of his skin disorder; and (3) his First Amendment rights of freedom of speech and access to the courts are being violated by the Revised Policy. (Doc. 13). In September 2017, District Judge Richard P. Conaboy dismissed Defendant Corizon Healthcare, Inc., from the action. (Docs. 51, 52).

One year later, Judge Conaboy granted in part a motion for judgment on the pleadings filed by all DOC Defendants ("September 2018 Order"). (Docs. 67, 68). Judge Conaboy dismissed Pittman's claim alleging unlawful detainment on the ground that this claim was previously dismissed by Eastern District of Pennsylvania and could not be resurrected in the amended complaint. (Doc. 67 at 6-8). Judge Conaboy further concluded that Pittman's Eighth Amendment claim failed because he did not adequately allege any personal involvement by DOC Defendants in his medical treatment. (Id. at 8-12). As to Pittman's access to the courts claim, Judge Conaboy determined that Pittman alleged no actual harm, and therefore dismissed that claim. (Id. at 12-15). However, Judge Conaboy permitted Pittman's free speech claim to proceed, as Defendants failed to adequately explain why that claim should be dismissed. (Id. at 15-16). Remaining DOC Defendants now seek summary judgment on Pittman's First Amendment free speech claim. (Doc. 69). Pittman in turn seeks a permanent injunction and partial reconsideration of the September 2018 Order. (Doc. 74).

## II. Legal Standard

With regard to Remaining DOC Defendants' motion for summary judgment, "[s]ummary judgment is appropriate when, drawing all reasonable inferences in favor of the nonmoving party, the movant shows that there is no genuine dispute as to any material fact, and thus the movant is entitled to judgment as a matter of law." Minarsky v. Susquehanna Cty., 895 F.3d 303, 309 (3d Cir. 2018) (internal quotation marks omitted).

As to Pittman's motion for reconsideration, such motions should be granted sparingly, and exist to "correct manifest errors of law or fact or to present newly discovered evidence." U.S. ex rel. Schumann v. Astrazeneca Pharm. L.P., 769 F.3d 837, 848 (3d Cir. 2014) (internal quotation marks omitted).

> Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

Id. at 848-49 (internal quotation marks omitted).

## III. Discussion

Remaining DOC Defendants contend that summary judgment is appropriate because the Revised Policy furthers an important government interest and is intrusive only to the extent necessary to further that interest. (Doc. 70 at 6-8). In addition to opposing that motion, Pittman seeks reconsideration of the September 2018 Order on the ground that Judge Conaboy made a clear error of law and fact in

5

dismissing Pittman's access to the courts claim, and seeks an injunction against the use of a third party to process inmate mail. (Doc. 74).

### A. Summary Judgment Motion

The Revised Policy applies only to outgoing mail, and the constitutionality of that policy is therefore analyzed pursuant to the standard set forth in Procunier v. Martinez, 416 U.S. 396, 413 (1974). See Nasir v. Morgan, 350 F.3d 366, 371 (3d Cir. 2003). "The applicable test from Martinez has two elements: (1) that the regulation must further an important or substantial government interest unrelated to the suppression of expression; and (2) that the regulation be no greater than necessary for the protection of that interest." Id. at 374.

With regard to the first element, it is undisputed that the Revised Policy is unrelated to the suppression of expression. (See Doc. 74). To the contrary, the Revised Policy involves no censorship and does not prevent or limit prisoners from sending outgoing mail, but simply alters the procedures for inmates to send mail after they exhaust their monthly allotment of Commonwealth-Purchased Envelopes. (Doc. 78 at ¶¶ 5-10). Thus, the only question is whether the Revised Policy furthers an important or substantial government interest. In that regard, the Supreme Court has held that prison officials "must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation." Martinez, 416 U.S. at 413. Typically, restrictions on outgoing prisoner mail are justified by institutional security. See, e.g., id. at 412-13; Nasir, 350 F.3d at 371. Indeed, Pittman dedicates

6

much of his brief in opposition to summary judgment arguing that the Revised Policy does nothing to enhance institutional security. (Doc. 74 at 6-9).

However, Remaining DOC Defendants justify the Revised Policy on the less frequently invoked need to maintain order within the prison—in this case by timely processing outgoing mail in accordance with DOC policy. (Docs. 70 at 7, 76 at 7). Under SCI-Dallas' old policy, once an inmate used his allotted Commonwealth-Purchased Envelopes for the month, he would attached a cash slip to a blank envelope, and prison mail officials were then required to check the inmate's account to determine if he had the necessary funds to pay the required postage, apply that postage to the envelope, and provide a receipt to the inmate. (Doc. 78 ¶¶ 3-5; Doc. 70 at 6). Such a laborious task interferes with the orderly operation of a prison in at least two notable ways.

First, delays attendant to that process disrupt and delay the flow of mail from the prison—including the mailing of documents that are critical to prisoners both personally and legally. Second, that process strains the resources of the prison. Inadequate staffing levels in both the mail and accounting departments led to a concern that outgoing mail would not be timely processed as required by DOC policy. (Doc. 78 ¶ 4). SCI-Dallas therefore implemented the Revised Policy "in an ongoing effort to save time and resources . . . [by] reduc[ing] the work load for staff in inmate accounting and in the mail room" that was presented by the need to process cash slips. (Id. ¶ 5). Thus, the Revised Policy allows SCI-Dallas to maintain staff levels and permits the prison to dedicate resources elsewhere as needed.

7

Although the United States Court of Appeals for the Third Circuit has not addressed whether concerns such as avoiding delays in processing mail and the management of scarce resources constitute substantial government interests, the United States Court of Appeals for the Sixth Circuit addressed analogous concerns in Bell-Bey v. Williams, 87 F.3d 832 (6th Cir. 1996). There, a prison's policy subsidized ten stamps per month for each prisoner but thereafter loaned postage only to non-indigent prisoners, and only if the mail that the prisoner sought to send was legal in nature. Id. at 834. The Sixth Circuit noted that the policy in question merely "considered the economic factors associated with loaning additional postage to prisoners," and held that "limiting postage expense is a substantial interest." Id. at 838 (emphasis omitted). The court observed that "the regulation furthers an important government interest unrelated to expression; namely, the management of limited prison resources. Although not technically within the confines of the substantial interests articulated in Martinez, it is fundamental that fiscal considerations form the core of any orderly system." Id. (internal quotation marks omitted).

The reasoning expressed in Bell-Bey is sound, and the Court concludes that the management of limited resources and timely processing of outgoing mail both related to the orderly administration of a prison. Because the Revised Policy helps maintain order within SCI-Dallas, it serves an important government interest and thus satisfies the first Martinez element.

8

The Court must therefore examine the second Martinez element—whether the Revised Policy is no greater than necessary for the protection of that government interest. Nasir, 350 F.3d at 374. Notably, this element "is not a least-restrictive means test." Id. at 375. Rather, "Martinez required no more than that a challenged regulation be 'generally necessary' to a legitimate governmental interest." Thornburgh v. Abbott, 490 U.S. 401, 411 (1989) (quoting Martinez, 416 U.S. at 414). Although "Martinez required a close fit between the challenged regulation and the interest it purported to serve," the Supreme Court has emphasized that courts must be "careful . . . not to limit unduly the discretion of prison officials . . ." Id. at 411-12.

The Court concludes that the Revised Policy is generally necessary to the orderly functioning of the prison. As discussed previously, the Revised Policy alleviates the work load for prison staff in the mail room and inmate accounting by reducing the number of cash slips that need to be processed. (Doc. 78 at 2). This in effect shifts the burden from prison staff to the prisoners to ensure that each prisoner has enough funds to cover the cost of postage, to obtain that postage, and ready the envelopes for mailing. There are few simple solutions to strained budgets, underfunded departments, and overworked staff, but the Revised Policy appears to be one such solution.

Moreover, the Revised Policy is narrowly tailored to avoid any interference with outgoing mail; it does not ban or restrict any outgoing mail.³ The Revised Policy simply requires that non-indigent prisoners pay for postage prior to—rather than after—mailing their documents. (Doc. 78 at 2). This relatively minor burden for prisoners alleviates a significant strain on prison resources. Furthermore, this requirement does not apply to indigent prisoners, who may still have their mail processed using Commonwealth-Purchased Envelopes. (Doc. 70-1 at 7). Notably, Pittman has not alleged any less restrictive means of accomplishing the prison's interest, and none is apparent from the record.

Although Pittman asserts that some outgoing mail—including his rejected mail—necessarily requires additional postage, thus undermining the stated reason for the Revised Policy, this alone does not render the Revised Policy unconstitutional. That prison staff must undertake a time-and-labor-intensive examination of <u>some</u> outgoing mail does not mean that it must do so for <u>all</u> outgoing mail, nor does this moot the effects of the Revised Policy, as a great deal of outgoing mail may still be processed in accordance with the Revised Policy. Even if the solution is not a perfect one, perfection is not required, and the Court finds no reason to override the informed discretion of prison officials in the maintenance and direction of SCI-Dallas' finances. See <u>Nasir</u>, 350 F.3d at 376 (noting that "[s]uch

---

³ While the Revised Policy did, in a narrow sense, result in the rejection of Pittman's mail, prison staff did not refuse to mail those documents but instead required that Pittman comply with the Revised Policy to send that mail. (Doc. 71 ¶¶ 8-15). In a broader sense then, Pittman's intransigence, rather than the Revised Policy, resulted in the rejection of Pittman's mail.

regulations are necessary if, 'prison administrators and not the courts, are to make the difficult judgments concerning institutional operations.'" (alterations omitted) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). The Court thus concludes that the Revised Policy satisfies the second Martinez element and, consequently, passes Constitutional muster.

### B. Motion for Reconsideration

Next, Pittman seeks reconsideration of the September 2018 Order as it relates to Pittman's First Amendment access to the courts claim. (Doc. 74 at 16-23). Pittman contends that reconsideration is required to correct a clear error of fact and prevent manifest injustice, as he adequately alleged actual injury sufficient to support that claim. (Id. at 16-17). Specifically, Pittman asserts that he suffered two injuries: (1) Defendants actually prevented Pittman from mailing his documents to the relevant state courts and slowed those court proceedings, and (2) as a result of the rejection of his mail, Pittman "suffer[ed] mental and emotional anguish and distress." (Id.).

To establish a claim for denial of access to the courts, a plaintiff must allege that his access to the courts was impaired, and that he suffered actual injury because of Defendants' actions. Jones v. Brown, 461 F.3d 353, 359 (3d Cir. 2006). Actual injury results when a prisoner "has been hindered in an effort to pursue a nonfrivolous legal claim," id., which includes "the loss or rejection of a legal claim." Oliver v. Fauver, 118 F.3d 175, 177 (3d Cir. 1997); see also Lewis v. Casey, 518 U.S. 343, 349-51 (1996).

11

As to Pittman's first contention, while it is clear that his mail was returned when he failed to comply with the Revised Policy, Pittman makes no allegation that he was unable to later timely mail his documents to the relevant courts or that a minor delay affected those proceedings. (Doc. 13 at 9-13). Thus, Pittman failed to allege that his access to the courts was actually impacted by the Revised Policy. Moreover, any delay in Pittman sending his mail was not due to the Revised Policy, but instead due to Pittman's intransigence. For example, there is no allegation that Commissary-Purchased Envelopes were unavailable, that Pittman was not permitted access to the commissary to acquire Commissary-Purchased Envelopes, or that he was unaware of the Revised Policy. To the contrary, inmates were informed of the Revised Policy approximately six weeks prior to its implementation (Doc. 70-1 at 7), and Pittman consistently argues that he had sufficient funds to pay postage for his mailings. (Doc. 74 at 19, 22-23). Pittman simply refused to comply with the Revised Policy.

With regard to Pittman's assertion that he suffered mental and emotional distress (Doc. 74 at 17), he fails to link any such distress with an inability to effectively access the courts. Such inability is the cornerstone of an access to the courts claim, and it is the only relevant injury that courts consider. Jones, 461 F.3d at 359. As such, mental and emotional distress, standing alone, is insufficient to support such a claim. See Crawford-El v. Britton, 951 F.2d 1314, 1322 (D.C. Cir. 1991) (noting that alleged injuries such as "emotional distress" are "completely peripheral . . . [and] do not help show a violation of the . . . right . . . of access to the

courts."). In light of Pittman's failure to allege any actual injury, reconsideration of the September 2018 Order is not warranted.

### C. Request for Injunctive Relief

Finally, Pittman requests permanent injunctive relief to prevent the DOC from utilizing a third-party vendor to process inmate mail. (Doc. 74 at 23-25). Pittman did not raise any related claim in his amended complaint (see Doc. 13), and, as the Third Circuit has repeatedly held, parties may not amend their complaints through a brief in opposition to a motion for summary judgment. E.g. McLaud v. Indus. Res., Inc., 715 F. App'x 115, 121 n.5 (3d Cir. 2017). Because Pittman seeks to improperly add a claim for injunctive relief not contained in his complaint, his request must be denied.

## IV. Conclusion

For the foregoing reasons, the court will grant Remaining DOC Defendants' motion for summary judgment and deny Pittman's requests for reconsideration and for permanent injunctive relief. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: June 6, 2019